IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SARAEUN MIN, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Criminal Action No. 1:10-cr-446-2 |
| ) | Civil Action No. 1:14-cv-640 |
| UNITED STATES OF AMERICA ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Petitioner Saraeun Min's Motion to Vacate, set

Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the

Motion is DENIED.

### I. Background

From June to October 2010, the Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF") conducted an undercover investigation involving Petitioner and other co-conspirators.

In June 2010, an ATF confidential informant introduced three undercover law enforcement

officers ("UCs") to Defendant Phun, who was based in Philadelphia. During the meeting, they

discussed Phun's large-scale marijuana trafficking as well as a potential armed robbery of a

narcotics "stash house" in Virginia. Following this initial meeting, Phun met with the UCs from

June 2010 to October 2010, exchanging contraband cigarettes for marijuana.

On October 6, 2010, Phun met with the UCs in Fairfax County, Virginia to discuss the

logistics of the stash house robbery. The UCs provided Phun with pictures of motels, explaining

that these were the locations where one UC had previously picked up kilograms of cocaine. The

UC explained that when he arrived to collect the drugs, he observed ten kilograms of cocaine and

1

was met by three or four armed individuals. Phun then explained that he had access to ballistic vests as well as FBI raid jackets and hats, and that he and his associates could pose as law enforcement during the robbery. The UCs informed Phun that the cocaine would arrive at the stash house in three weeks.

On October 21, 2010, the UCs met with Phun, Defendant Johnson, and a third unnamed individual at a Famous Dave's restaurant in Philadelphia to discuss the upcoming robbery. The UCs explained the seriousness of the robbery and questioned the Defendants' desire to conduct it. Defendants agreed that they wished to go through with it. Johnson confirmed that the crew would bring their own firearms for the task. At the end of the meeting, the UCs informed Defendants that the cocaine would arrive in Virginia the following Thursday. Defendants agreed that they would travel to Virginia on Wednesday and conduct the robbery on Thursday.

On October 28, 2010, the remaining Defendants, including Petitioner, arrived in Virginia to conduct the robbery. Defendant Un contacted the UCs and arranged to meet at a gas station in Fairfax County, Virginia. Around 11am, the UC arrived at the gas station where Defendants were parked in a white Suburban. Un and Johnson approached the UC where they shook hands. The UC then advised the Defendants to follow him to a storage facility where the rental car to be used for the robbery was located.

After following the UCs to a storage facility, Defendants Un, Johnson, and Min indicated that they were ready to do the job, and stated that the firearms were in the white Suburban. After more discussion, the UC suggested that they transfer the firearms from the Suburban to the rental. Un then walked to the Suburban and engaged in conversation with Defendant Stevens and Petitioner. Ten minutes later, Stevens and Petitioner exited the car and walked towards the storage unit, concealing firearms under their clothes and in their pockets. They then placed the

2

guns in a compartment inside the rental car. Defendants McCalister and Stevens then joined the rest of the group in the storage unit. The UC asked McCalister and Stevens whether they were ready, and they confirmed they were. At this time, the UC pretended to receive a call from a drug organization member and advised the group that it was time to start the robbery. Law enforcement then moved in and arrested Petitioner and the other Defendants.

On December 28, 2010, Min was indicted along with five co-Defendants on three counts: (1) conspiracy to affect commerce by robbery in violation of 18 U.S.C. § 1951(a) (the "Hobbs Act"); (2) possession of a firearm during a crime of violence in violation of 18 U.S.C. § 924(c); and (3) conspiracy to possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1). All six defendants were tried jointly. On March 18, 2011, the jury found four of the defendants, including Petitioner, guilty of all three counts. Two other defendants were found guilty of the first two counts. On July 1, 2011, this Court sentenced Petitioner to serve 195 months of imprisonment (two concurrent terms of 135 months and a consecutive term of 60 months). The six defendants filed a consolidated appeal with the United States Court of Appeals for the Fourth Circuit. On January 3, 2013, the Fourth Circuit affirmed the convictions. *U.S. v. Min*, 704 F.3d 314 (4th Cir. 2013). The United States Supreme Court denied a petition for certiorari on May 28, 2013. *Min v. U.S.*, 133 S. Ct. 2752 (2013). On May 29, 2014, Min filed the current petition and a supplemental brief and memorandum of law. Dkt. Nos 352, 353. The United States filed a response in opposition on September 4, 2014, after receiving an extension of time from the Court. Dkt. No. 390. Min then filed a reply brief on December 5, 2014, also after receiving an extension of time from the Court. Dkt. No. 415.

On December 31, 2015, Defendant, through an appointed federal public defender, filed an unopposed Motion to Reduce Sentence under changes to the Sentencing Guidelines that had

been made retroactive. Dkt. No. 479. The Court granted the Motion and reduced Min's sentence from 195 to 180 months.

## II. Discussion

A petitioner is entitled to relief under 28 U.S.C. § 2255 if he demonstrates either: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

In considering a § 2255 claim, a court should consider whether the petitioner is raising arguments that should have been brought on direct appeal. Generally, claims not raised on direct appeal are considered procedurally defaulted and may not be raised on collateral review absent extraordinary circumstances *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citations omitted); *Mustapha v. United States*, 2005 WL 1667682, at *5 (E.D. Va. June 10, 2005). Ineffective assistance of counsel claims and jurisdictional errors are two exceptions to this general rule. *Id.*; *United States v. Cotton*, 535 U.S. 625, 630 (2002) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived."). In order to bring a procedurally defaulted claim in a § 2255 motion, "a convicted defendant must show both (1) 'cause' excusing his procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Maybeck*, 23 F.3d 888, 891 (4th Cir. 1994). To establish cause in order to excuse a procedural default, petitioner must point to "something external to the defense, such as the novelty of the claim or the denial of the effective assistance of counsel," that impeded the defendant in seeking an appeal. *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999); *Mobley v. United States*, 974 F.Supp. 553,

4

556 (E.D. Va. 1997). "Thus, for petitioners seeking to raise a new claim on collateral review, the 'cause and prejudice' standard creates a 'significantly higher hurdle than would exist on direct appeal.'" *Mobley*, 974 F.Supp. at 556 (citing *Frady*, 456 U.S. at 166). To show prejudice, the petitioner must demonstrate that the alleged error "worked to his *actual* and substantial disadvantage, infecting his [sentence] with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Demonstrating prejudice requires a petitioner to show a reasonable probability of a different outcome absent the alleged error. *Id.* at 172.

Min rests his § 2255 motion on four different grounds: (1) the district court lacked jurisdiction to find him guilty; (2) courts have judicially expanded violations of 18 U.S.C. § 1951(a) to the point where their findings are unconstitutional; (3) he received ineffective assistance of counsel; and (4) there was an improper basis for expert testimony given by a fact witness during his trial. The Court will address each in turn.

### A. Whether the Court Lacked Jurisdiction to Find Min Guilty

Petitioner first argues that his sentence should be set aside because the Court lacked jurisdiction to find him guilty of violating the Hobbs Act and the other charges, which were predicated on the Hobbs Act. To obtain a conviction under the Hobbs Act, the government must establish two things: "(1) the underlying robbery or extortion crime, and (2) an effect on interstate commerce." *United States v. Strayhorn*, 743 F.3d 917, 922 (4th Cir. 2014) (quoting *United States v. Williams*, 342 F.3d 350, 353 (4th Cir. 2003)). Petitioner argues first that the Court did not have jurisdiction because the purported victims were fictional and any coercion used on a fictional victim could not adversely affect interstate commerce. Second, Petitioner argues that "individuals (such as those who purportedly inhabited the "stash house") are not

5

proper targets under the Hobbs Act, as an individual's activities do not effect interstate commerce."

Despite Petitioner's attempts to paint this as a jurisdictional challenge, the Court concludes it is not. The Fourth Circuit has clearly held that whether the interstate commerce element of a criminal charge "is demonstrated in an individual circumstance does not affect a courts constitutional or statutory power to adjudicate a case." *United States v. Carr*, 271 F.3d 172, 178 (4th Cir. 2001). Rather, "such a challenge merely contests the sufficiency of the evidence supporting that element of the offense." *Id.* Further, and as the Government points out, "[s]ubject-matter jurisdiction (in the sense of judicial power) over federal criminal prosecutions is conferred on district courts by 18 U.S.C. § 3231." *United States v. Hartwell*, 448 F.3d 707, 716 (4th Cir. 2006).

Because this challenge is not actually jurisdictional, Petitioner should have brought it on direct appeal. Petitioner did not raise this argument on direct appeal, therefore it is procedurally barred. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Accordingly, Petitioner must show cause and prejudice in order the raise this argument now. *Id.* Petitioner argues that his ineffective counsel was the cause that excuses his procedural default. Without fully addressing ineffective assistance of counsel here,[1] the Court concludes that Petitioner's argument fails because he has not established prejudice.

As the Government points out, Petitioner's claim essentially seeks to reargue the factual impossibility argument, in slightly different form, that this Court has already decided and the Fourth Circuit has affirmed. *See U.S. v. Min*, 704 F.3d 314, 324 (4th Cir. 2013) (holding that factual impossibility is not a defense to the crime of conspiracy). The factual impossibility defense also does not negate the interstate commerce requirement of the Hobbs Act. *United*

---

[1] Ineffective assistance of counsel will be addressed fully in Part II.C.

*States v. Taylor*, 754 F.3d 217, 225 (4th Cir. 2014) ("Under the targeting theory, a defendant who

robs a victim in the belief that he will recover the proceeds of an enterprise engaged in interstate

commerce will not fortuitously escape prosecution under the Hobbs Act because his target did

not possess those proceeds at the precise time of the robbery."). The Fourth Circuit explained

the Hobbs Act's interstate commerce requirement in *United States v. Williams*:

> The Hobbs Act . . . does not require proof that a defendant intended to affect
> commerce or that the effect on commerce was certain; it is enough that such an
> effect was the natural, probable consequence of the defendant's actions. . . . The
> question is not simply whether one particular offense has a measurable impact
> upon interstate commerce, but whether the relevant class of acts has such an
> impact. . . . Drug dealing, to repeat, is an inherently economic enterprise that
> affects interstate commerce. . . . For this reason, the robbery of a drug dealer has
> been found to be the kind of act which satisfies the "affecting commerce" element
> of the Hobbs Act, inasmuch as such a robbery depletes the business assets of the
> drug dealer.

*United States v. Williams*, 342 F.3d 350, 354-55 (4th Cir. 2003) (citations omitted). As in

*Williams*, the Petitioner and his co-conspirators sought to steal from a drug dealer. This crime

falls into a "class of acts" that has a "measurable impact upon interstate commerce." *See id.*

Thus, the interstate commerce requirement was satisfied even though the stash house was

fictitious and even though the fictitious victims of the robbery were individuals.

Several Circuit Courts have come to this same conclusion. *See, e.g., United States v.*

*Taylor*, 480 F.3d 1025, 1027 (11th Cir. 2007). The facts in *Taylor* are almost identical to those

present here. The Defendant in that case, Taylor, "conspired to violently rob the stash house of a

narcotics organization." *Id.* However, the stash house and the narcotics organization were

entirely fictitious entities crafted by a reverse sting operation conducted by ATF. *Id.* at 1026.

Taylor challenged the interstate commerce element of his Hobbs Act conviction, "because the

object of the planned robbery, cocaine, did not exist." *Id.* The Eleventh Circuit upheld the

conviction, finding that "[t]he fact that the intended victims and narcotics were fictional is

7

irrelevant." *Id.* at 1027. The *Taylor* court concluded that "[i]f the cocaine in this case actually existed, a sufficient interstate nexus would exist to satisfy the jurisdictional requirement of the Hobbs Act." *Id.* Similarly here, if the stash house in this case had actually existed, the interstate nexus requirement would have been easily satisfied. That alone is enough to satisfy the interstate commerce element of a Hobbs Act conviction.

Adopting the *Taylor* court's holding, the Court concludes that the Government did establish the interstate commerce requirement necessary to convict Min of a Hobbs Act violation. Accordingly, Min cannot prove actual prejudice—that the outcome of his case would have been different had he raised this argument at trial. The Court, therefore, concludes that Min is barred from raising this argument now. In addition, because the Court has fully analyzed this claim, the Court also rejects this argument on its merits.

### B. Whether Courts Have Unconstitutionally Expanded Violations of 18 U.S.C. § 1951(a)

Petitioner next recasts his first argument as a constitutional challenge. Petitioner argues that the Fourth Circuit has unconstitutionally expanded the Hobbs Act to cover crimes that have a minimal or no impact on interstate commerce. He asserts that the application of the Hobbs Act as to him was unconstitutional because the interstate commerce requirement was not satisfied because the targeted victims and stash house were fictional.

Petitioner also failed to raise this argument at trial or on direct review. Accordingly, it is barred as procedurally defaulted unless Petitioner can show cause and prejudice. *See Massaro v. United States*, 538 U.S. 500, 504 (2003). Petitioner did not respond to the Government's arguments on this claim in his reply brief. As such, he does not explain why he failed to raise this argument earlier or what prejudice would result if the Court did not permit it now. The argument certainly is not "novel." *United States v. Bonnette*, 781 F.2d 357, 361 (4th Cir. 1986)

(stating that cause can be shown by demonstrating that the constitutional claim is "novel"). As Petitioner's opening brief shows, many Courts have taken up this issue. Beyond a claim of ineffective assistance,[2] the Court sees no other possible cause for failing to raise this constitutional argument at trial or on appeal.

The Court also finds no prejudice. Even if Petitioner were allowed to bring this argument, the outcome would not change. As explained fully in the previous section, the interstate commerce requirement of the Hobbs Act is satisfied in this case even though the targeted victims and stash house were fictional. Because the Court finds no cause or prejudice, Petitioner is barred from raising this argument now. In addition, because the Court has fully analyzed the claim, the Court also rejects Petitioner's constitutional argument on its merits.

### C. Whether Min's Counsel Was Ineffective

Petitioner next alleges that his sentence should be vacated because his counsel, John E. Gullette, provided him with ineffective assistance. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance of counsel. The first prong of the *Strickland* test requires a showing that counsel failed to provide reasonably effective assistance; that is, that counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Id.* at 687-88, 690. The second prong requires the defendant to show prejudice. *Id.* at 694. Under this prong, the Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* The burden of proving both prongs is on the petitioner who seeks to challenge the conviction. *Id.* at 696-97.

Petitioner asserts that his counsel was ineffective for three reasons: (1) he failed to assert the jurisdictional and constitutional arguments set forth above; (2) he failed to raise an

---

[2] Again, the ineffective assistance of counsel argument will be fully discussed in Part II.C.

entrapment defense; and (3) he failed to challenge his Criminal History Category at sentencing. The Court will address each of these reasons in turn.

### (1) Failure to Raise Jurisdictional and Constitutional Arguments

The Court finds defense counsel's failure to raise the jurisdictional and constitutional arguments was neither objectively unreasonable nor prejudicial. First, as explained in the previous two sections, the jurisdictional and constitutional arguments based on factually impossibility are not meritorious. Therefore, even if defense counsel had raised them, they would not have succeeded and Petitioner still would have been convicted of a Hobbs Act violation. Second, defense counsel's decision not to raise these arguments was a strategic decision made by trial counsel that the Fourth Circuit has advised courts not to "second guess." *Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987). Defense counsel instead chose to pursue several other arguments, including one very similar to the jurisdictional and constitutional arguments Petitioner now raises. Defense counsel argued extensively at trial and on appeal that factual impossibility negated the conspiracy conviction. Considering the ultimate futility of the arguments, and defense counsel's overall strategy, the Court cannot conclude that the decision not to make the jurisdictional and constitutional arguments Petitioner now raises was objectively unreasonable. *See id.* ("Counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another."). Finding neither prong of the *Strickland* test satisfied, the Court cannot find ineffective assistance on this ground.

### (2) Failure to Raise Entrapment Defense

Petitioner next argues that his counsel was ineffective for failing to assert an entrapment defense at trial and at sentencing. First, defense counsel did raise the entrapment defense before this Court. Entrapment was fully briefed and argued extensively and jointly by all the co-

10

Defendants before trial. The Court then decided to wait to rule on the issue of entrapment until after it heard all of the evidence at trial. In order to assert an entrapment defense, a defendant must present some evidence, "more than a scintilla," that the government induced him to commit the offense charged. *United States v. Perl*, 584 F.2d 1316, 1321 (4th Cir. 1978). "If a defendant fails to carry the burden on the issue of entrapment forward, he is not entitled to submission of the issue to a jury." *Id.* (citations omitted). None of the Defendants in this case presented any evidence at trial, so the Court concluded they had not met their evidentiary burden and could not submit the affirmative defense of entrapment to the jury. Insofar as the Petitioner is challenging defense counsel's decision not to present any evidence at trial, Petitioner has not established that that decision was unreasonable. Petitioner has not identified any evidence that he thinks his counsel should have presented in support his entrapment defense.

The Court also does not find it unreasonable that defense counsel chose not to raise entrapment at the sentencing hearing. The Court notes that defense counsel did raise the entrapment defense, albeit briefly, in his Position on Sentencing memorandum. Dkt. No. 202 ("Mr. Min takes the position that since no drugs ever existed to be robbed, he should not have been convicted on that drug (5 Kilos) offense."). However, concluding that the argument was futile in light of the Court's prior rulings on entrapment, Petitioner's counsel chose to focus on other issues during the sentencing hearing. In addition, counsel for several of Petitioner's co-Defendants did raise entrapment at their sentencing hearings and the Court rejected this argument. In light of all this, the Court finds it reasonable that defense counsel did not vigorously assert entrapment at the sentencing hearing. The Court also finds no prejudice. Even if Defendant had strongly asserted entrapment at sentencing, the outcome would not have been any different, as demonstrated by the Court's repeated rejection of this argument.

Again, because Petitioner has failed to establish either prong of the *Strickland* test, the Court does not find ineffective assistance of counsel based on the failure to raise an entrapment defense.

### (3) Failure to Challenge Petitioner's Criminal History Category at Sentencing

Petitioner next argues that his counsel was ineffective because he failed to object to his Criminal History Category at sentencing. The Court assigned Petitioner two criminal history points based on a contempt of court charge that carried a sentence of three to six months. This assignment of points placed Petitioner in Criminal History Category II. Petitioner asserts that the contempt of court charge should not have been considered and, accordingly, that he should have been placed in Criminal History Category I.

First, defense counsel did raise this argument in his Position on Sentencing memorandum. Dkt. No. 202 ("His only offense that should be used to calculate his history is a single misdemeanor that should not put him in a criminal history II category."). Second, Petitioner was correctly placed in Criminal History Category II. Section 4A1.1(b) of the Sentencing Guidelines directs courts to "[a]dd 2 [criminal history] points for each prior sentence of imprisonment of at least sixty days . . . ." Because the contempt of court charge carried a sentence of three to six months, the Court properly assigned Petitioner two criminal history points for this offense and properly placed him in Criminal History Category II.

Because counsel did object to the criminal history category and the Criminal History Category was correctly calculated, the Court cannot find defense counsel provided ineffective assistance.

## D. Whether There Was an Improper Basis for Expert
### Testimony Given by a Fact Witness During Trial

Finally, Petitioner argues that his sentence should be set aside because one of the

Government's chief witnesses, Detective Robert Snyder, gave both factual and expert testimony

without properly distinguishing between the two and without providing a proper basis for his

expert testimony.

Petitioner's argument fails for several reasons. First, Petitioner "cannot circumvent a

proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion." *United

States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Petitioner already raised this argument on

appeal and the Fourth Circuit found this Court correctly admitted Detective Snyder's testimony.

The Fourth Circuit's ruling on this issue bars Petitioner from reasserting this argument in this

§ 2255 motion.

Petitioner's motion could be interpreted as asserting that the Fourth Circuit's recent

decision in *United States v. Garcia*, 752 F.3d 382 (4th Cir. 2014) changed the controlling law.

An analysis of *Garcia*, however, reveals that it does not affect the applicable law. In *Garcia*, a

decoding expert had testified at trial as both an expert witness and a fact witness. *Id.* at 392. The

agent testified as to the meaning of certain code words based both on her personal participation

in conversations and based on her expert interpretation of conversations she did not participate

in. *Id.* at 392-93. The Fourth Circuit found that the district court erred in failing to take adequate

steps to make sure that the witness's dual role as an expert witness and a fact witness did not

prejudice or confuse the jury. *Id.* at 392. In contrast, at the trial in this case, Detective Snyder

only testified about information that was based on his personal perceptions. *Min*, 704 F.3d at

325. Snyder participated "in each of the conversations about which he testified," and he was not

required to draw on his specialized expertise to interpret other conversations in which he was not

13

a participant. *Id.* Accordingly, *Garcia* is readily distinguishable and has no impact on Petitioner's case.

For both of the reasons outlined above, the Court rejects Petitioner's fourth argument as grounds for vacating his sentence.

### III. Conclusion

As outlined above, the Court finds that Petitioner has not established that he is entitled to relief under 28 U.S.C. § 2255. Accordingly, the Court finds good cause to DENY Petitioners Motion to Vacate, Set Aside, or Correct Sentence. An appropriate Order will issue.

April ⏋, 2016
Alexandria, VA

_____  /s/ ✎
Liam O'Grady
United States District Judge

14